**BRADLEY/GROMBACHER, LLP**
Marcus Bradley, Esq. (SBN 174156)
Kiley Grombacher, Esq. (SBN 245960)
Lirit King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Telephone: (805) 270-7100
Facsimile: (805) 618-2939
Email:
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
Email: lking@bradleygrombacher.com

**CAPSTONE LAW APC**
Orlando Villalba, Esq. (SBN 232165)
Helga Hakimi, Esq. (SBN 257381)
Roxanna Tabatabaeepour, Esq.
(SBN260187)
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 556 4811
Facsimile: (310) 943 0396
Email:
Orlando.Villalba@capstonelawyers.com
Helga.Hakimi@capstonelawyers.com
Roxanna.Taba@capstonelawyers.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRO RODRIGUEZ<br><br>PLAINTIFF,<br><br>v.<br><br>MITSUBISHI CHEMICAL CARBON FIBER AND COMPOSITES, INC., et al.<br><br>DEFENDANT | **CASE NO. 8:21-CV-01711-CJC (JDEx)**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 23, 2023<br>Time: 1:30 p.m.<br>Place: Courtroom 9B |

## NOTICE OF MOTION

**TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT:**

On January 23, 2023, at 1:30 p.m. or as soon thereafter as can be heard in Courtroom 9B of the above-captioned Court, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, CA 92701, plaintiff Sandro Rodriguez ("Plaintiff") will and hereby does move the Court for an Order preliminarily approving the class settlement, certifying a class for settlement purposes, approving the manner and form of notice to the class, appointing Plaintiff as the class representative, appointing Plaintiff's counsel as class counsel, preliminarily approving class counsel's fees and expenses, preliminarily approving Plaintiff's service payment, setting a hearing for final approval of the class settlement, and granting such other and further relief as the Court deems just and proper, on the following grounds:

1.     The settlement is fair, reasonable and adequate under Rule 23, achieved as the result of informed, arms-length negotiations, and deserving of approval for the benefit of the settlement class members to whom it pertains.

2.     The settlement class meets the requirements of Rule 23.

3.     The manner and form of notice are the best notice practicable under the circumstances.

4.     Plaintiff and his counsel have and will adequately represent the interests of the class.

5.     The proposed attorneys' fees and costs and service payments are reasonable.

This motion shall be based on the memorandum of points and authorities filed by Plaintiff, the Declarations of Plaintiff, Kiley Lynn Grombacher, and Raul Perez, and the exhibits thereto, and the Court's own records, files, notes, and other documents on file in this matter, as well as upon all oral and/or documentary

1    evidence as may be properly presented at the time of the hearing of this matter.

2

3    DATED:  December 21, 2022              **BRADLEY/GROMBACHER, LLP**
                                            **CAPSTONE LAW APC**
4

5

6                                  By: _  /s/ Kiley Grombacher_____
                                       Marcus Bradley, Esq.
7                                      Kiley Grombacher, Esq.
                                       Lirit King, Esq.
8                                      Orlando Villalba, Esq.

9
                                       Attorneys for Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1
II.  BACKGROUND .................................................................................. 2
     A.   Procedural History ................................................................... 2
     B.   Mediation & Negotiation ......................................................... 2
III. OVERVIEW OF SETTLEMENT TERMS .................................... 3
     A.   The Proposed Settlement Class ................................................ 3
     B.   Settlement Terms ...................................................................... 3
          1.   Class Representative's General Release Payment ............ 3
          2.   Attorneys' Fees and Costs ............................................... 4
          3.   Payment to the LWDA and PAGA Releasees ................ 4
          4.   Settlement Administration Expenses ............................. 4
          5.   Settlement Payments to Class Members ......................... 5
          6.   Funding and Distribution of Settlement Funds ............. 6
          7.   Uncashed Checks .............................................................. 6
IV.  RELEASED CLAIMS .......................................................................... 7
V.   ANALYSIS ............................................................................................ 8
     A.   Class Certification Requirements ............................................. 8
          1.   Rule 23(a) Requirements ................................................. 9
               a.   Numerosity ............................................................. 9
               b.   Commonality ........................................................... 9
               c.   Typicality ................................................................ 11
               d.   Adequacy ................................................................ 11
          2.   Rule 23(b)(3) Requirements ........................................... 12
               a.   Predominance ......................................................... 12
               b.   Superiority .............................................................. 13
     B.   Fairness of the Proposed Settlement ........................................ 13
          1.   The Settlement Is the Product of Arms-Length
               Negotiation ..................................................................... 14
          2.   The Proposed Settlement Provides Meaningful
               Relief Given the Strength of Plaintiff's Claims and
               the Risks and Expenses of Litigation ............................. 15
          3.   Attorney's Fees .............................................................. 18
          4.   Incentive Award ............................................................. 19
          5.   PAGA Payment ............................................................... 20

    C.     Settlement Administrator ....................................................20
    D.     Notice of the Proposed Settlement......................................20
VI.    CONCLUSION .............................................................................21

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ali v. USA. Cab Ltd.*

176 Cal. App. 4th 1333 (2009) .......................................................................... 16

*Alvarez v. Farmers Ins. Exchange*

No. 3:14-cv-00574-WHO, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ................................................................................................................. 19

*Amchem Prods., Inc. v. Windsor*

521 U.S. 591 (1997) ................................................................................. 8, 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*

568 U.S. 455 (2013) ...................................................................................... 12

*Aqui v. Sutton Foundation, Inc.*

Case No. 30-2008-00180062 (Orange County Super. Ct.) ............................ 15

*Badami v. Grassroots Campaigns, Inc.*

Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) ................................. 15

*Barbosa v. Cargill Meat Sols. Corp.*

297 F.R.D. 431 (E.D. Cal. 2013) .................................................................. 18

*Blackwell v. Skywest Airlines, Inc.*

245 F.R.D. 453 (S.D. Cal. 2007) .................................................................. 16

*Brinker v. The Superior Court of San Diego*

53 Cal. 4th (2012) ........................................................................................ 16

*Brown v. Fed Express Corp.*

249 F.R.D. 580 (C.D. Cal. 2008) .................................................................. 16

*Burden v. SelectQuote Ins. Servs.*

No. C 10-5966 LB, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) .................. 18

Campbell v. Best Buy Stores, L.P.

2013 U.S. Dist. LEXIS 137792 (C.D. Cal. Sept. 20,2013) ........................... 16

*Contreras v. United Food Group, LLC*

    Case No. BC389253 (L.A. County Super. Ct.) ............................................... 15

*Cooper Cos. Inc. Sec. Litig.*

    254 F.R.D. 628 (C.D. Cal. 2009) ......................................................................9

*D Amato v. Deutsche Bank*

    236 F.3d 78 (2d Cir. 2001) ............................................................................. 14

*Deaver v. Compass Bank*

    No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11,

    2015) ................................................................................................................ 18

*Doty v. Costco Wholesale Corp.*

    Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14,2007) ........................ 16

*Ferra v. Loews Hollywood Hotel, LLC*

    11 Cal. 5th 858 (2021) .................................................................................... 18

*Franco v. Ruiz Food Products, Inc.*

    No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27,

    2012) ................................................................................................................ 18

*Fukuchi v. Pizza Hut*

    Case No. BC302589 (L.A. County Super. Ct.) ............................................... 15

*Garcia v. Lift*

    2020 U.S. Dist. LEXIS 220762 ...................................................................... 18

*Garner v. State Farm Mut. Auto. Ins*

    No. CV 08 1365 CW, 2010 WL 1687832 (N.D. Cal. Apr. 22,

    2010) ................................................................................................................ 19

*Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*

    446 U.S. 318 (1980) ........................................................................................9

*Gen. Tel. Co. of Sw. v. Falcon*

    457 U.S. 147 (1982) ........................................................................................9

*Gomez v. Amadeus Salon, Inc.*

    Case No. BC392297 (L.A. Super. Ct.)............................................................. 16

*Gonzalez v. Officemax N. Am.*

    2012 U.S. Dist. LEXIS 163853 (C.D. Ca. Nov. 5,2012) ................................ 16

*Hanlon v. Chrysler Corp.*

    150 F.3d 1011 (9th Cir. 1998) ............................................................. 11, 12, 14

*Hopson v. Hanesbrands Inc.*

    Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal.

    Apr. 3, 2009)................................................................................................... 20

*Howell v. Advantage RN, LLC*

    2020 U.S. Dist. LEXIS 182505 ...................................................................... 18

*In re Apple Computer, Inc. Derivative Litig.*

    2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5,2008).............................. 14

*In re Tableware Antitrust Litig.*

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................... 14

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions*

    *Act (FACTA) Litig.*

    295 F.R.D. 438 (C.D. Cal. 2014) ................................................................... 19

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*

    571 F.3d 953 ⁽9th Cir. 2009) ......................................................................... 12

*Jamil v. Workforce Res.*

    2020 U.S. Dist. LEXIS 2074902 ..................................................................... 18

*Jimenez v. Allstate Ins. Co.*

    2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18 2012).............................. 16

Kenny v. Supercuts, Inc.

    252 F.R.D. 641 (N.D. Cal. 2008) ................................................................... 16

*Lim v. Victoria's Secret Stores, Inc.*

    Case No. 04CC00213 (Orange County Super. Ct.) ........................................ 16

VII

**TABLE OF AUTHORITIES**

*Molski v. Gleich*

 318 F.3d 937 (9th Cir. 2003) ............................................................... 14

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*

 311 F.R.D. 590 (C.D. Cal. 2015) ..........................................................9

*Nordstrom Com. Cases*

 186 Cal. App. 4th 576 (2010) ............................................................. 20

*Officers for Justice v. Civil Serv. Comm'n,*

 688 F.2d 615 (9th Cir. 1982) ............................................................... 15

*Ordonez v. Radio Shack, Inc.*

 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. Jan. 17,2013) ................................... 17

*Radcliffe v. Experian Info. Sols. Inc.*

 715 F.3d 1157 (9th Cir. 2013) ............................................................. 19

*Ressler v. Federated Department Stores, Inc.*

 Case No. BC335018 (L.A. County Super. Ct.) ................................................ 16

*Rodriguez v. West Pub. Corp.*

 463 F.3d 948 (9th Cir. 2009) ........................................................ 15, 19

*Sandoval v. Nissho of Cal., Inc.*

 Case No. 37-2009-00091861 (San Diego County Super. Ct.) ........................ 15

*Satchell v. Fed. Express Corp.*

 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................... 14

*Sorenson v. PetSmart, Inc.*

 Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) ........................................... 16

*Staton v. Boeing Co.*

 327 F.3d 938 (9th Cir. 2003) ..................................................... 8, 11, 13

*Tait v. BSH Home Appliances Corp.*

 289 F.R.D. 466 (C.D. Cal. 2012) ...........................................................9

*Valentino v. Carter-Wallace, Inc.*

 97 F.3d 1227 (9th Cir. 1996) ............................................................... 13

**VIII**

**TABLE OF AUTHORITIES**

*Van Vranken v. Atlantic Richfield Co.*

    901 F.Supp.294 (N.D. Cal 1995) .................................................... 19

*Vasquez v. Coast Valley Roofing, Inc.*

    266 F.R.D. 482 (E.D. Cal. 2010).................................................... 18

*Vizcaino v. Microsoft Corporation*

    290 F.3d 1043 (9th Cir.2018) ......................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*

    564 U.S. 338 (2011) ..........................................................................9

*Wannemacher v. Carrington Mortg. Servs., LLC*

    No. SACV 122016 FMO, 2014 WL 12586117 (C.D. Cal. Dec.

    22, 2014) .......................................................................................... 19

*Wellens v. Sankyo*

    No. C 13-00581 WHO, 2016 WL 8115715 (N.D. Cal. Feb. 11,

    2016) ................................................................................................ 19


<u>Rules</u>

Fed. R. Civ. P. 23(a) ...............................................................................8
Fed. R. Civ. P. 23(b)(3) ........................................................................ 13
Fed. R. Civ. P. 23(c)(2)(B) ............................................................ 20, 21
Rules 23(a) ............................................................................................ 13
Rule 23(a)(1).......................................................................................... 9
Rule 23(a)(2) .................................................................................... 9, 12
Rule 23(a)(3) ........................................................................................ 11
Rule 23(a)(4) ........................................................................................ 11
Rule 23(b) ............................................................................................ 12
Rule 23(b)(3)............................................................................ 12, 13, 20
Rule 23(c)(2)(B) .................................................................................. 21
Rule 23(c)(3) ........................................................................................ 21
Rule 23(e) ............................................................................................ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a wage and hour class action against defendants Mitsubishi Chemical Carbon Fiber and Composites, Inc., Mitsubishi Chemical Holdings America, Inc. and Mitsubishi Chemical America, Inc. ("Mitsubishi" or "Defendants"), on behalf of all current and former non-exempt employees who worked for Defendants in California during the period December 23, 2018 through the date of preliminary approval of the settlement or October 1, 2022, whichever is sooner.

By this action, Plaintiff challenged Mitsubishi's employment policies and practices alleging, *inter alia,* that Defendants failed to pay employees all wages owed, to provide meal and rest periods, to reimburse business expenses, to provide safety devices, to pay vacation wages, to pay timely wages during employment or upon separation, and to provide accurate and/or complete wage statement.  Plaintiff is pleased to announce that the parties have reached a settlement of this action and that this litigation has therefore accomplished its aims.  The parties have negotiated a settlement which, if approved, will provide for an Eight Hundred Thousand Dollar ($800,000) common fund.  Class Members need not submit a claim and will be compensated *pro rata* according to the weeks they worked within the Class Period.

An objective evaluation of the Settlement confirms that the relief negotiated by the Parties is fair and reasonable.  The Settlement was negotiated by the Parties at arm's length during mediation with the Honorable Jay Gandhi (Ret.), an experienced mediator, and the Settlement confers substantial benefits to Class Members.[1]  By settling now rather than proceeding to trial, Class Members will not have to wait for relief, nor will they have to bear the risk of class certification being denied or of Defendants prevailing at trial.

---

[1] The resume for the Honorable Jay Gandhi is attached to the Grombacher Decl. as **Exhibit B**.

**1**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval and falls within the range of reasonableness. Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff filed a class action complaint on September 7, 2021, alleging multiple wage and hour class action claims against Defendants, including claims for unpaid wages due to alleged off-the-clock work, failure to provide meal and rest breaks, unreimbursed business expenses, failure to pay vacation wages, failure to provide safety devices, and the standard derivative wage and hour claims. On October 14, 2021, Defendants removed the class action to this Court.

On April 4, 20200, Plaintiff filed a separate lawsuit in the Orange County Superior Court seeking civil penalties under the Private Attorneys General Act of 2004, California Labor Code sections 2698, et seq. ("PAGA") premised on the same violations as those alleged in his class action complaint, entitled *Rodriguez v. Mitsubishi Chemical Carbon Fiber and Composites, Inc. et al.*, Case 30-2022-01253057-CU-OE-CXC ("PAGA Action".)  The PAGA Action was dismissed on September 30, 2022.

### B.   Mediation & Negotiation

For purposes of mediation, Mitsubishi shared time and payroll records for a randomly selected sample population of 20% of the putative class during the Class Period. Mitsubishi also provided policy documents and other information in the interest of resolving these matters, including excerpts from its handbooks. The parties agreed to stay formal discovery while the parties proceed with mediation.

Additionally, prior to mediation, Mitsubishi informed Plaintiff's counsel of an earlier class action settlement in the *Henry Cress* class action (Case No. 34-2017-00222101, Sacramento County Superior Court), which released similar claims to

those alleged here through December 22, 2018. Plaintiff reviewed the relevant documents and the parties agreed to resolve all class and PAGA claims for the shorter time period not covered by the *Cress* lawsuit

Armed with this information, and through mediation conducted on May 26, 2022, with Judge Gandhi, Plaintiff was able to reach an agreement in principle on a settlement.

## III.   OVERVIEW OF SETTLEMENT TERMS

The principal terms of the Agreement are as follows:

### A.   The Proposed Settlement Class

All current and former non-exempt employees who worked for Defendants in California during the time period of December 23, 2018 through the date of preliminary approval of the settlement or October 1, 2022. Settlement Agreement at ¶¶ Article I, c, h. "PAGA Group Members" means all Class Members employed by Defendants at any time between September 7, 2020 through October 1, 2022 ("PAGA Period"). Settlement Agreement at ¶¶ Article I, c, cc.

### B.   Settlement Terms

Under the Agreement, Defendants will pay Eight Hundred Thousand Dollars and Zero Cents ($800,000.00) ("Gross Settlement Amount" or "GSA") to fully and finally settle this matter.  Settlement Agreement at ¶ Article I, t.  In no event will Defendants be required to pay more than the Gross Settlement Amount, except for the employer's share of payroll taxes, which Defendants will pay separately from and in addition to the Gross Settlement Amount.  No portion of the GSA will revert to Defendants for any reason.  The following deductions from the GSA will be made, subject to the Court's approval:

#### 1.   Class Representative's General Release Payment

Subject to Court approval, Plaintiff shall receive a Service Enhancement not to exceed $7,500 in consideration for a general release of all claims against Defendants. Settlement Agreement at ¶ Article I, n The payment shall be made from the GSA.  If

**3**

the amount awarded is less than the amount requested, the difference shall become part of the Net Settlement Amount ("NSA").  The payment is in consideration for a general release of Plaintiff's claims against Defendants, his efforts in the litigation and the risks he undertook for the benefit of the class.  *See* Settlement Agreement at ¶ Article III, 3.06(d).

### 2.    Attorneys' Fees and Costs

Subject to Court approval, Plaintiff's Counsel shall request an award of attorneys' fees in an amount of $264,000 (one third of the GSA).  *See* Settlement Agreement at ¶¶ Article I, e.  This includes work remaining in documenting the settlement, securing Court approval, ensuring the settlement is fairly administered, and obtaining dismissal of the action.  Also, subject to Court approval, Plaintiff's Counsel shall request a reimbursement from the GSA for actual litigation costs in an amount not to exceed $15,000.00.  *See* Settlement Agreement at ¶¶ Article I, e; Article III, 3.06(b).

### 3.    Payment to the LWDA and PAGA Releasees

Subject to Court approval, the Agreement allots $50,000.00 to PAGA penalties.  Seventy-five percent (75% or $37,500.00) of the PAGA Payment shall be paid to the Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25% or $2,500.00) of the PAGA Payment will be distributed to the PAGA Group Members on a pro rata basis based on the number of workweeks that they worked from during the PAGA Period.  *See* Settlement Agreement at ¶¶ Article I, s, bb.

### 4.    Settlement Administration Expenses

After obtaining competing bids from administrators, the Parties have agreed to the appointment of Phoenix Settlement Administrators ("Phoenix") as the settlement administrator.  *See* Settlement Agreement at ¶¶ Article I, mm.  Phoenix is an experienced class administration company that has acted as claims administrator in numerous wage and hour cases.  The Agreement allots an amount not to exceed

4

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1    $12,000.00 to administer the Settlement.  *See* Settlement Agreement at ¶ Article I, ll.

2    The Administration Costs will be paid from the GSA.  If Phoenix's actual

3    costs or the amount awarded is less than the amount allotted in the Agreement, the

4    difference shall become part of the NSA and distributable to Participating

5    Class Members.  These costs are reasonable, as Phoenix will mail notice packets to

6    the class, maintain a website which has information about the Settlement and links to

7    the settlement documents, and keep track of objections and requests for exclusion

8    from the Settlement.  Should preliminary and final approval be granted by the Court,

9    Phoenix will work with the Parties to facilitate the funding of the GSA, disbursement

10   of all Court-approved payments, and disbursement of the NSA to Participating

11   Class Members.

12               **5.      Settlement Payments to Class Members**

13   After all deductions have been made, it is estimated that $451,500 (i.e., the

14   "Net Settlement Amount" or "NSA") will be available for disbursement to

15   Participating Class Members (all Class Members who do not submit a valid and

16   timely request to exclude themselves from this Settlement).  The money available for

17   payout to these individuals comes out of the NSA, which is what remains of the GSA

18   after subtracting all Court approved attorneys' fees and costs, the

19   Class Representative General Release Payments, Administration Costs, and the

20   PAGA Payment.  Each Class Member who does not timely opt-out of the Settlement

21   will receive a *pro rata* share (their "Class Member Payment") of the NSA based on

22   the number of weeks that he or she worked in each position covered by the

23   Settlement.  *See* Settlement Agreement at ¶¶ Article I, q; Article III, 3.06(f).

24   One-third of the Class Member Payment constitutes wages for the purposes of

25   IRS reporting, and will be reported to the IRS pursuant to form W-2, while the other

26   two-thirds constitutes payments for non-wage penalties, damages, and interest and

27   will reported to the IRS pursuant to form 1099.  The payment to the PAGA Group

28   Members constitutes payments for non-wage penalties, damages, and interest and

will reported to the IRS pursuant to form 1099.  The Settlement Administrator (and not Defendants) will remit all federal and state taxes owed by Defendants and will issue W2s and 1099s on all funds distributed.  *See* Settlement Agreement at ¶ Article III. 3.06(f).

### 6.    Funding and Distribution of Settlement Funds

Within fifteen (15) business days after the Date of Finality, Defendants shall transfer the Gross Settlement Amount, plus Defendants' share of employer-side payroll taxes, as set forth herein, into a QSF established by the Settlement Administrator either directly or by sending the funds to the Settlement Administer to be deposited and distributed. Settlement Agreement at ¶ Article III. 3.06(a).  The Settlement Administrator will use these funds to fund payment of the Individual Settlement Payments, Class Counsel's Attorneys' Fees and Costs' Payment, the Enhancement Award, the LWDA Payment, and the Settlement Administration Costs. Id.

Within fifteen (15) business days after receiving Defendants' final payment funding the Gross Settlement Amount in full, the Settlement Administrator will pay the Individual Settlement Payments, Class Counsel's Attorneys' Fees and Costs' Payment, the LWDA Payment, the Enhancement Award, and employer and employee tax withholdings applicable to the Net Settlement Amount allocated to wages. Prior to this distribution, the Settlement Administrator will perform a search based on the National Change of Address Database to update and correct for any known or identifiable address changes.  Id.

*See id.*

### 7.    Uncashed Checks

Pursuant to the Agreement, a Participating Class Member and PAGA Group Member must cash his or her Class Settlement Share check, and any remaining Aggrieved Employees his or her Aggrieved Employee Payment check, within 180 calendar days after it is mailed to him or her.  If any check is not cashed within 180

days after its mailing to the Participating Class Member and PAGA Group Member, the Settlement Administrator will distribute the unclaimed funds represented by the uncashed check to Legal Aid of Los Angeles. *See* Settlement Agreement at ¶ Article III, 3.06(f).

## IV. Released Claims

In exchange for Defendants' promise to make the payments provided for in the Agreement, upon the Court's final approval of this Settlement, Participating Class Members will fully release and discharge the Released Parties from the Released Claims:

> All claims, demands, rights, liabilities, penalties, fees, and causes of action that were or could have been asserted by reason of or in connection with any matter or fact set forth or referred to in the operative complaint in the Action (whether in tort, contract, statute or otherwise) during the Class Period, including, but not limited to, for alleged violations of Labor Code sections 200, 201-203, 218.5, 221, 223, 226, 226.3, 226.7, 227.3, 500, 510, 512, 516, 1174.5, 1182.11-1182.12, 1194, 1194.2, 1197, 1198, 2802, 2699.3 et seq., 6400-6401, or any claims based on the following allegations: failure to pay minimum, regular, or hourly wages, and/or alleged off-the-clock work; failure to pay overtime wages or accurate overtime wages; failure to provide compliant meal periods; failure to provide compliant rest periods; failure to reimburse for necessary business expenses; failure to pay vacation wages; failure to pay timely wages during employment or upon separation; failure to provide accurate and/or complete wage statements; or violation of Cal. Bus. & Prof. Code section 17200 et seq. by engaging in the foregoing conduct. Released Claims include all claims for unpaid wages, overtime wages, statutory penalties, civil penalties, damages of any kind, interest, attorneys' fees, costs, injunctive relief, restitution, and any other equitable relief under California or federal statute, ordinance, regulation, common law, or other source of law, including but not limited to the California Labor Code, California Business & Professions Code, California Civil Code, California Industrial Welfare Commission Wage Orders.

*See* Settlement Agreement at ¶ Article I, hh.

Additionally, all PAGA Group Members will release the Released Parties from the Released PAGA Claims:

> All claims, demands, rights, liabilities, penalties, fees, and causes of action under PAGA during December 23, 2018 through the date of preliminary approval) including under Labor Code sections 558 and/or 2698 et seq., predicated on any Labor Code violations alleged in the operative complaint in the Action (which

7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

include, but are not limited to, Labor Code sections 200, 201, 202, 203, 218.5, 221, 223, 226, 226.3, 226.7, 227.3, 500, 510, 512, 516, 1174.5, 1182.11- 1182.12, 1194, 1194.2, 1197, 1198, 2802, 6400-6401) or that could have been alleged in the operative complaints in the Action based on the facts, policies, practices, occurrences, or acts alleged in the operative complaints in the Action, or that are based on any failure to pay minimum, regular, or hourly wages, and/or alleged off-the-clock work; failure to pay overtime wages or accurate overtime wages; failure to provide compliant meal periods; failure to provide compliant rest periods; failure to reimburse for necessary business expenses; failure to pay vacation wages; failure to pay timely wages during employment or upon separation; failure to provide accurate and/or complete wage statements.

*See* Settlement Agreement at ¶ Article I, ii.

Only Plaintiff has agreed to a general release of all claims, including a waiver under California *Civil Code* section 1542. *See* Settlement Agreement at ¶ Article V, 5.03.

## V.    ANALYSIS

To determine whether preliminary approval of the Settlement Agreement is appropriate, the Court reviews (1) the requirements for class certification, (2) the fairness of the proposed settlement, (3) the attorney fees and incentive awards requested, (4) the request for appointment of a settlement administrator, and (5) issues relating to notice of the proposed settlement.

### A.    Class Certification Requirements

Where, as here, a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Here, the proposed settlement class includes "[a]ll current and former non-exempt employees who worked for Defendants in California during the time period of December 23, 2018 through the date of preliminary approval of the settlement or October 1, 2022." Settlement Agreement at ¶¶ Article I, c, h.

///

**8**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

### 1.     Rule 23(a) Requirements

Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests.

### a.     Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." There is no magic number required to satisfy numerosity; instead, courts consider the facts of each specific case. *See In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.,* 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); see *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012).

Here, numerosity is easily satisfied because Defendants' employment and payroll records show there are approximately 348 individuals in the proposed settlement class.[2]

### b.     Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The plaintiff must "demonstrate that the class members 'have suffered the same injury,' " which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the plaintiff's claim must depend on a "common contention" that is capable of classwide resolution. *Id*. This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

---

[2] The Parties will provide an updated number of class members for purposes of the Motion for Final Approval

1    *Id.*

2         Plaintiff alleges that Defendants required Plaintiff and Class Members to

3    consistently work off the clock, including during their meal breaks. This

4    uncompensated time includes time spent donning and doffing before and after shifts,

5    answering work calls after shifts, waiting outside the facilities to be let in prior to

6    starting a shift, and mandatory health screenings prior to shifts, all of which was

7    done off the clock. Further, Class Members were required to submit to mandatory

8    drug tests off the clock. The failure to pay at least minimum wages to Plaintiff and

9    other Class Members for each and every hour worked violates California Labor Code

10   §§ 1182.11-1182.12, 1194, 1194.2, and 1197; the applicable IWC Wage Order,

11   section 4. Further, Plaintiff alleges that Defendants failed to pay all wages owed, to

12   provide meal and rest periods, to reimburse business expenses, to provide safety

13   devices, to pay vacation wages, to pay timely wages during employment or upon

14   separation, and to provide accurate and/or complete wage statement.

15        Resolution of the class's claims presents common questions, including: (1)

16   whether Defendants failed to pay Plaintiff and Class Members for all hours worked

17   and for all overtime; (2) whether Defendants had a standard policy of not providing

18   compliant meal breaks and premiums to Plaintiff and Class Members; (3) whether

19   Defendants had a standard policy of not providing compliant rest breaks and

20   premiums to Plaintiff and Class Members; (4) whether Defendants had a standard

21   policy of not paying out vacation pay; (5) whether Defendants failed to maintain a

22   safe working environment; (6) whether Defendants failed to reimburse Plaintiff and

23   the Plaintiff Class for all business-related expenses; (7) whether Defendants failed to

24   timely pay Plaintiff and Class Members all wages during employment or upon

25   separation, and (8) whether Defendants failed to provide accurate wage statements to

26   Plaintiff and Class Members . Those questions are central to each class member's

27   claims and their resolution will help determine, "in one stroke," whether Defendants

28   violated the law and if so, the amount of damages the class may obtain. See *Dukes*,

**10**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1    564 U.S. at, 350.

2    **c.    Typicality**

3    Rule 23(a)(3) requires that the "claims or defenses of the representative parties

4    are typical of the claims or defenses of the class." Representative claims are

5    "typical" if they are "reasonably coextensive with those of the absent class members;

6    they need not be substantially identical." *Hanlon v. Chrysler Corp*., 150 F.3d 1011,

7    1020 (9th Cir. 1998). Here, as an hourly non-exempt employee, Plaintiff was subject

8    to the same policy as the rest of the class. (See Rodriguez Decl. ¶ 3.) His injury and

9    his claims are the same as those of the class members. (See id.) Accordingly,

10   Plaintiff's claims are "reasonably coextensive" with those of the class. See *Hanlon*,

11   150 F.3d at 1020.

12   **d.    Adequacy**

13   Rule 23(a)(4) requires that "the representative parties will fairly and

14   adequately protect the interests of the class." This factor requires (1) a lack of

15   conflicts of interest between the proposed class and the proposed representative

16   plaintiff, and (2) representation by qualified and competent counsel that will

17   prosecute the action vigorously on behalf of the class. *Staton,* 327 F.3d at 957. The

18   concern in the context of a class action settlement is that there be no collusion

19   between the defendant, class counsel, and class representatives to pursue their own

20   interests at the expense of the interests of the class. *Id.* at 958 n.12.

21   There is no evidence of a conflict of interest between Plaintiff and the class.

22   Plaintiff's claims are identical to those of the class, and he has every incentive to

23   vigorously pursue those claims. Nor is there any evidence that Plaintiff's counsel

24   will not adequately represent or protect the interests of the class. Plaintiff's counsel,

25   Bradley/Grombacher LLP and Capstone Law APC have extensive experience

26   litigating wage-and-hour class actions. (See Grombacher Decl. ¶¶ 32-39.) The record

27   indicates that Counsel has represented the class capably and adequately.

28   ///

### 2. Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Plaintiff must satisfy the requirements of Rule 23(b) to show that the action falls within one of the three "types" of classes. Here, Plaintiff seeks certification under Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a. Predominance

Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry … [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Here, questions common to the class predominate over any questions affecting only individual members. The central question in this case is whether Defendants had a policy of requiring employees to perform work for which they were not compensated including: time spent donning and doffing before and after shifts, answering work calls after shifts, waiting outside the facilities to be let in prior to starting a shift, and mandatory health screenings prior to shifts, all of which was done off the clock. That question can be resolved using common evidence regarding Defendants' policy for all class members.

The collateral questions in this case are whether Defendants paid class members all wages owed, whether Defendants failed to provide meal and rest breaks, whether Defendants failed to reimburse for necessary business expenses, whether

1  Defendants failed to pay vacation wages, whether Defendants failed to pay timely

2  wages during employment and upon separation, and whether it provided accurate

3  wage statements. These questions can also be resolved using common evidence—

4  including Defendants' time records and pay stubs—for all Class Members.

### b.    Superiority

6       Class actions certified under Rule 23(b)(3) must also be "superior to other

7  available methods for fairly and efficiently adjudicating the controversy." Fed. R.

8  Civ. P. 23(b)(3). Courts consider four nonexclusive factors in evaluating whether a

9  class action is the superior method for adjudicating a plaintiff's claims: (1) the

10  interest of each class member in individually controlling the prosecution or defense

11  of separate actions, (2) the extent and nature of any litigation concerning the

12  controversy already commenced by or against the class, (3) the desirability of

13  concentrating the litigation of the claims in the particular forum, and (4) the

14  difficulties likely to be encountered in the management of a class action. Id.

15       Proceeding as a class is superior to other methods of resolving this case. A

16  class action may be superior "[w]here classwide litigation of common issues will

17  reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace,*

18  *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action may also be superior when

19  "no realistic alternative" to a class action exists. *Id.* at 1234–35. Here, given the

20  common issues presented by all class members, adjudicating these claims on an

21  individual basis for more than 300 employees would be not only inefficient, but also

22  unrealistic. Additionally, the Supreme Court has held that a district court "need not

23  inquire whether the case, if tried, would present intractable management problems"

24  in a "settlement-only class certification." *Amchem*, 521 U.S. at 620. Accordingly,

25  Plaintiff's proposed class is appropriate for provisional certification under Rules

26  23(a) and 23(b)(3).

### B.    Fairness of the Proposed Settlement

28       Plaintiff seeks preliminary approval of the Settlement. Rule 23(e) "requires the

13

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1   district court to determine whether a proposed settlement is fundamentally fair,

2   reasonable, and accurate." *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at

3   1026). To determine whether this standard is met, courts consider factors including

4   "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration

5   of further litigation; the risk of maintaining class action status throughout the trial;

6   the amount offered in settlement; the extent of discovery completed, and the stage of

7   the proceedings; the experience and views of counsel; ... and the reaction of the class

8   members to the proposed settlement." Id. (quoting *Molski v. Gleich*, 318 F.3d 937,

9   953 (9th Cir. 2003)).

10      At the preliminary approval stage, a full "fairness hearing" is not required. *In*

11  *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Rather,

12  the inquiry is whether the settlement "appears to be the product of serious, informed,

13  non-collusive negotiations, has no obvious deficiencies, does not improperly grant

14  preferential treatment to class representatives or segments of the class, and falls

15  within the range of possible approval." *Id.*

16      **1.  The Settlement Is the Product of Arms-Length Negotiation**

17      Here, the settlement is the product of an arms-length negotiation process

18  overseen by a well-respected neutral third party. (Grombacher Decl. ¶¶ 13-18.)

19  Indeed, "[t]he assistance of an experienced mediator in the settlement process

20  confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007

21  WL 1114010 (N.D. Cal. Apr. 13, 2007) at *4; *In re Apple Computer, Inc. Derivative*

22  *Litig.*, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5,2008) No. C 06-4128 JF

23  (HRL), (mediator's participation weighs considerably against any inference of a

24  collusive settlement), *D Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a

25  "mediator's involvement in pre-certification settlement negotiations helps to ensure

26  that the proceedings were free of collusion and undue pressure.") At all times, the

27  Parties' negotiations were adversarial and non-collusive.

28  ///

### 2.  The Proposed Settlement Provides Meaningful Relief Given the Strength of Plaintiff's Claims and the Risks and Expenses of Litigation

In assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615,625 (9th Cir. 1982) (internal quotation marks omitted). There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009).

Here, each Participating Class Member will receive a meaningful sum— payouts will depend on the number of qualifying workweeks worked by each class member, but the average payment to class members is estimated to be about $1,300. (Grombacher Decl. ¶ 21.)

The Settlement also presents a fair compromise in light of the risks and expense of continued litigation. Litigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions. Specifically, the parties had the benefit of significant informal discovery, including written policies produced by Defendants as well as a sampling of employee payroll and timekeeping data, as well as a full day of mediation. (Grombacher Decl. ¶ 18.) With that information, the parties were able to realistically value Defendants' liability and assess the risk of moving forward with class certification, motion practice, and trial. The $800,000 settlement amount represents about 13% of Defendants' potential exposure in this case[3]. (Id. ¶ 23.) Again, like the monetary recovery, this percentage

---

[3] See, e.g., See, e.g., *Aqui v. Sutton Foundation, Inc.*, Case No. 30-2008-00180062 (Orange County Super. Ct.) (average net recovery of approximately $445); *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008)

compares favorably with similar cases particularly given that Plaintiff faced significant hurdles to recovery.

While Plaintiff is confident that he has strong claims, he also recognizes that if the litigation had continued, they may have encountered legal and factual hurdles that could have prevented the Class from obtaining any recovery. For example, although a number of cases have found wage and hours actions to be especially amenable to class resolution, [4] several have gone the other way, finding that some of the very claims at issue here were not suitable for class adjudication because they raised too many individualized issues[5]. Some courts have denied certification even

---

(average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.,* Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.,* Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14,2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.,* Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.,* Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

[4] See e.g. *Brinker v. The Superior Court of San Diego,* 53 Cal. 4th (2012) at 1033 ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment... The theory of liability - that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment.").

[5] See *Ali v. USA. Cab Ltd.*, 176 Cal. App. 4th 1333,1341 (2009) (denying certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); Campbell v. Best Buy Stores, L.P., 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20,2013) (following Brinker and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees) *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Ca. Nov. 5,2012)

when an employer's policies are unlawful on their face. For instance, in *Ordonez v. Radio Shack, Inc*., 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. Jan. 17,2013) *35-41, the court denied certification even though the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks. The *Ordonez* court concluded that the predominance and superiority elements were not met based on the employer's presentation of anecdotal evidence of lawful compliance notwithstanding the unlawful policy. Id. at *38-40.

Given the discretion accorded to the district court, even a relatively strong case on the merits may not satisfy the standards for certification on a contested motion. This reality added to the risk of continued litigation and militated in favor of settlement. Indeed, it is usually preferable to reach an early resolution of a dispute because such resolutions save time and money that would otherwise go to litigation. For example, if this action had settled following additional litigation, the settlement amount would likely have taken into account the additional costs incurred, and there may have been less available for Class Members.

Certification, however, was not the only potential bar to recovery.  Defendants would have argued that they maintained lawful policies and practices, including policies requiring employees to record all time worked, prohibiting off-the-clock work, providing employees with compliant meal and rest breaks (and paying premiums when appropriate), and reimbursing employees for business expenses as required by law. As such, Plaintiff would have to offer extensive evidence to establish that Defendants did not, in fact, conform to such policies.

For example, as to Plaintiff's "overtime calculation" claim, evidence

(same); *Brown v. Fed Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); Kenny v. Supercuts, Inc., 252 F.R.D. 641,645 (N.D. Cal. 2008) denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453,467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

established that Defendants pay shift differentials to employees who work eligible shifts (typically the night shift), and correctly includes shift differential pay in the regular rate of pay for purposes of calculating overtime. Similarly, Defendants also appeared to pay meal period premiums at the higher shift differential rate, which comports with the recent decision in *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021).   While there was a dispute regarding whether bonuses paid to employees were discretionary or non-discretionary, Defendants paid so few bonuses during the Class Period that the damages were *de minimus*.

Similarly, as to the meal break claims, the time records reveals that only 7% of all eligible meal periods appear on their face to be noncompliant (i.e., missed, late, or short) during the Class Period.

Accordingly, the Settlement reflects a fair result.

### 3. Attorney's Fees

The Settlement provides for Two Hundred and Sixty-Four Thousand Dollars ($264,000.00) and Class Counsel's actual costs not to exceed Fifteen Thousand Dollars and Zero Cents ($15,000.00). That amount reflects just under one-third of the $800,000 settlement amount. Similar cases have approved fees up to one-third of the settlement fund[6]. Accordingly, Plaintiff's request for an award of one-third of the

---

[6] See *Vizcaino v. Microsoft Corporation*, 290 F.3d 1043 (9th Cir.2018) at 1048-50. The 33.33% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions. See *Garcia v. Lift*, No.1:18-cv-01261-DAD JLT, 2020 U.S. Dist. LEXIS 220762, at *43-58, 2020 WL 6886383 (E.D. Cal. Nov. 24, 2020) (approving attorneys' fees of one-third of the common fund in a wage and hour class action); *Jamil v. Workforce Res.*, No. 18-CV-27 JLS (NLS), 2020 U.S. Dist. LEXIS 2074902, at *11-12, 2020 WL 6544660 (S.D. Cal. Nov. 5, 2020); *Howell v. Advantage RN, LLC*, No. 17-CV-883-JLS (BLM), 2020 U.S. Dist. LEXIS 182505, at *14-15, 2020 WL 5847565 (S.D. Cal. Oct. 1, 2020); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *9-14 (N.D. Cal. Dec. 11, 2015) (approving attorneys' fees of one-third of the settlement fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33% of the common fund and collecting cases regarding the same); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of the settlement fund); *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *18 (E.D. Cal. Nov. 27, 2012) (awarding

1   gross settlement amount is a reasonable amount of attorneys' fees.  Plaintiff will

2   provide detailed evidence and declarations supporting the requested fee award at the

3   final approval stage.

### 4.  Incentive Award

5       Plaintiff seeks a $7,500 incentive award to compensate the class representative

6   for his time and efforts on behalf of the class. Incentive awards are payments to class

7   representatives for their service to the class in bringing the lawsuit. *Radcliffe v.*

8   *Experian Info. Sols. Inc.,* 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards "are

9   fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub.*

10  *Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed).

11      The service award sought is within the range of awards approved by other

12  federal judges in class actions. See, e.g., *Wellens v. Sankyo,* No. C 13-00581 WHO,

13  2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding $25,000 for named

14  plaintiffs); *Garner v. State Farm Mut. Auto. Ins.,* No. CV 08 1365 CW, 2010 WL

15  1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth

16  Circuit and elsewhere have approved incentive awards of $20,000 or more ...."); *Van*

17  *Vranken v. Atlantic Richfield Co.* 901 F.Supp.294 (N.D. Cal 1995) at 299-300

18  (approving $50,000 to one named plaintiff); *Alvarez v. Farmers Ins. Exchange*, No.

19  3:14-cv-00574-WHO, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (service

20  award of $10,000 each was "fair and reasonable" where the aggregate amount of the

21  service awards constituted 1.8% of the total settlement and the average payout to

22  class members was $956.18); *Wannemacher v. Carrington Mortg. Servs., LLC*, No.

23  SACV 122016 FMO, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) (granting final

24  approval and awarding enhancement 7.7 times greater than average class member

25  recovery of $259); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit*

26  *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (final

27

28  33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482,
    491-92 (E.D. Cal. 2010) (awarding 33.33% of the common fund).

1   approval granted and awarding enhancements 166 to 1,000 times greater than value

2   of $5, $15, and $30 vouchers).  Plaintiff will file a formal motion for the negotiated

3   Class Representative Enhancement Payments once preliminary approval of the

4   Settlement is granted.

5       **5.  PAGA Payment**

6       The Settlement includes a PAGA payment of $50,000, with $37,500 (75% of

7   the $50,000) being paid to the California Labor and Workforce Development

8   Agency, and $12,500 (25% of the $50,0000) being paid to class members as part of

9   the net settlement amount. This result was reached after good-faith negotiation

10  between the parties. Where PAGA penalties are negotiated in good faith and "there

11  is no indication that [the] amount was the result of self-interest at the expense of

12  other Class Members," such amounts are generally considered reasonable. *Hopson v.*

13  *Hanesbrands Inc*., Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D.

14  Cal. Apr. 3, 2009); see, e.g., *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579

15  (2010) ("[T]rial court did not abuse its discretion in approving a settlement which

16  does not allocate any damages to the PAGA claims.").

17      **C.    Settlement Administrator**

18      Plaintiff asks the Court to appoint Phoenix Settlement Administrators

19  ("Phoenix") as settlement administrator. The parties have jointly agreed to use

20  Phoenix as the settlement administrator and they represent that they do not have any

21  financial interest in Phoenix or otherwise have a relationship with Phoenix that could

22  create a conflict of interest, (id.). Accordingly, Plaintiff requests that the Court

23  appoints Phoenix as settlement administrator. Detailed evidence supporting

24  administrator expenses will be required before final approval.

25      **D.    Notice of the Proposed Settlement**

26      Finally, Plaintiff seeks approval of the proposed manner and form of the

27  notice that will be sent to the class members. For Rule 23(b)(3) classes, courts "must

28  direct to class members the best notice that is practicable under the circumstances,

1   including individual notice to all members who can be identified through reasonable

2   effort." Fed. R. Civ. P. 23(c)(2)(B).

3        Here, the proposed manner of notice—centered on direct mail-- is adequate.

4   Following preliminary approval, Defendants will provide an updated list of class

5   members to the settlement administrator. *See* Settlement Agreement at ¶ Article I, f

6   Phoenix will run the names and addresses from this list through the National Change

7   of Address Database and update its information accordingly. Phoenix will then mail

8   a notice to each class member via first class mail and perform skip traces on any

9   notice package returned as undeliverable. *See id.* at ¶ Article III, 3.03.

10       Moreover, the form of notice meets all of the requirements of Rule

11  23(c)(2)(B). The parties proposed notice "clearly and concisely state, in plain, easily

12  understood language (i) the nature of the action; (ii) the definition of the class

13  certified; (iii) the class claims, issues or defenses; (iv) that the class member may

14  enter an appearance through an attorney if the member so desires; (v) that the court

15  will exclude from the class any member who requests exclusion; (vi) the time and

16  manner for requesting exclusion; and (vii) the binding effect of a class judgment on

17  members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

18  **VI.   CONCLUSION**

19       The parties have negotiated a fair and reasonable settlement. Accordingly,

20  Plaintiff moves the Court to preliminarily approve the Settlement Agreement; direct

21  the dissemination of notice to the class as proposed; and set a hearing date and

22  briefing schedule for final Settlement approval and Plaintiff's fee and expense

23  application.

24  ///

25  ///

26  ///

27  ///

28  ///

1

DATED:  December 21, 2022

**BRADLEY/GROMBACHER, LLP
CAPSTONE LAW APC**

2

3

4

By:   _/s/ Kiley Grombacher_

5

Marcus Bradley, Esq.
Kiley Grombacher, Esq.
Lirit King, Esq.
Orlando Villalba, Esq.

6

7

8

Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**